**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Charlottesville Division**

**JASON KESSLER,** *et al.*,

               **Plaintiff,**

**v.**

**CITY OF CHARLOTTESVILLE,** *et al.*,

               **Defendants.**

**Civil Action No. 3:19cv00044**

**DEFENDANT CRANNIS-CURL'S**
**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Plaintiff Jason Kessler organized the Unite the Right rally on August 12, 2017. (Dkt. 1 ¶ 72). Kessler knew even before he held the rally that his message was offensive to many people "due to its liberal use of racially and religiously offensive language." (Dkt. 1 ¶ 12.) In the months leading up to Kessler's rally, groups known as Antifa made it an "explicit mission" to use violent disruption to prevent Kessler and those like him from sharing their "racially and religiously offensive" message. (Dkt. 1 ¶¶ 12-15, 23). Kessler alleges that the defendants knew that Antifa would target his rally, but his Complaint makes it clear that Kessler himself knew his rally would attract violent opposition by Antifa, based on their activities at other rallies organized by the "Alt-Right." (Dkt. 1 ¶¶ 23-27).

Despite Kessler's intentional use of inflammatory and offensive rhetoric at his rallies, even in the face of violence by opposition groups, Kessler planned no private security for his rally. Instead, he appears to have relied on the state and local law enforcement officials to protect him -- not only from violence, but even from interruption by hecklers. Kessler's suit is premised on a constitutional right not just to protection *from* government interference, but for the

1

protection *of* government interference to stop other private citizens from interrupting his planned speech. (Dkt. 1 ¶¶ 90-93.)

This Court recently ruled and was affirmed by the Fourth Circuit that people at the Unite the Right rally had no constitutional right to government protection from unlawful acts by other citizens at the rally. *Turner v. Thomas*, 930 F.3d 640, 646 (4th Cir. 2019). If there is no right to police protection from violence, then there is no right to police protection from mere interruption by hecklers. Because the Complaint fails to state a cause of action pursuant to 42 U.S.C. § 1983, this case should be dismissed with prejudice, just as this Court dismissed a similar lawsuit brought pursuant to 42 U.S.C. § 1982 when it was brought by one of the people protesting at Kessler's Unite the Right rally. *Turner v. Thomas,* 313 F. Supp. 3d 704 (W.D. Va. May 29, 2018).

## **FACTS AS ALLEGED IN THE COMPLAINT**

Kessler organized the Unite the Right to take place on August 12, 2017, to protest the removal of a statue of Confederate General Robert E. Lee from Emancipation Park in Charlottesville. (Dkt. No. 1, ¶ 9.) Plaintiff David Matthew Parrott wanted to engage in unspecified "expressive political activity in support of Mr. Kessler" and listen to speakers at the Unite the Right event. (*Id*. at ¶ 10.)

At the rally, as anticipated, violence broke out. (*Id*. at ¶¶ 51-69.) Plaintiffs claim that after counter-protestors blocked the entrance to Emancipation Park, rally attendees "were forced to defend themselves from physical violence" and refer to this violence as "fighting" and "mutual combat." (*Id*.) Because rally attendees were engaged in violent fights, purportedly in order to defend themselves, Plaintiffs claim that they were unable to "peacefully rally," speak as they planned, or hear other speakers. (*Id*. at ¶ 56.)

2

Plaintiffs allegations against Crannis-Curl specifically focus on a claim that Lieutenant Crannis-Curl and other law enforcement officers did not "send 'arrest teams' into the street" to break up fights between attendees and counter-protestors. (*Id.*at ¶ 64.) Plaintiffs also allege that Charlottesville police officers took a more active role to control counter-protestors at a KKK rally that occurred a month earlier, but without real success. (*Id.* at ¶¶ 27-28.) Despite police protection and efforts, both the police and KKK attendees were assaulted at the KKK rally. (*Id.* at ¶ 27.) Police officers were assaulted with "tomatoes and water bottles and spit on" while trying to protect the KKK. (*Id.*)

Plaintiffs premise their civil rights claims on the alleged basis that both state and local law enforcement officers at the rally failed in their constitutional duties to ensure that Unite the Right attendees had perfect protection to exercise their First Amendment rights and that they should be guaranteed equal access to public forums. Yet, they simultaneously allege that it was impossible for local police to fulfill those duties at an earlier rally. (*Id.* at ¶¶ 27-28.) Furthermore, there are no actual allegations made against Lieutenant Crannis-Curl: she did not make any decisions with regard to granting or revoking access to a public forum and Plaintiffs acknowledge the decisions that were within her authority were based upon a risk assessment of the conditions at the rally, not on the viewpoints of Plaintiffs. (*Id.* at ¶ 66.) Therefore, the Amended Complaint's alleged facts directly contradict the alleged legal conclusions and the Amended Complaint should be dismissed with prejudice.

## LEGAL STANDARD

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) requires that a complaint state on its face a "plausible" claim. The Supreme Court of the United States held that district courts must examine a complaint to determine whether the plaintiff has alleged facts sufficient to make a particular cause of action plausible. *Id.* at 557. Specifically, although on a Rule 12(b)(6) motion

3

all facts pled by a plaintiff are assumed to be true by the Court, a plaintiff must "provide the 'grounds' of his 'entitlement to relief,'" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id*. at 555 (internal citation omitted). Thus, a complaint must provide defendants more than mere notice of those claims that a plaintiff may bring against them. A well-pled complaint will show why the plaintiff is entitled to relief, rather than just make a blanket assertion that the plaintiff's rights were violated:

> Rule 8(a)(2) still requires a 'showing', rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.

*Id*. at 554 n.3 (citing 5 *Wright & Miller* § 1202, at 94, 95). The "plausibility" standard set forth in *Twombly* requires more than a mere possibility that a defendant has acted unlawfully. *Id*. at 556.

## ARGUMENT

The Amended Complaint fails the plausibility test set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and therefore should be dismissed for failure to state a claim upon which relief may be granted.

## I. THE FIRST AND FOURTEENTH AMENDMENTS DO NOT REQUIRE THE GOVERNMENT TO PROTECT SPEAKERS FROM HECKLERS

Plaintiffs premise their claim against Lieutenant Crannis-Curl on a theory that the First Amendment right to free speech includes a right to police protection from private citizens seeking to disrupt Plaintiffs' speech. (Dkt. No. 1, ¶¶ 8, 89-93.) Plaintiffs assert the First Amendment right to Free Speech includes the right to police protection from being interrupted by hecklers. (*Id*. at ¶ 8.) The claim asserted by Plaintiffs is strikingly similar to the one asserted in this Court by plaintiff Robert Sanchez Turner, in which Turner brought suit against the City of Charlottesville, the chief of the Charlottesville Police Department, and the superintendent of the

4

Virginia State Police alleging he had a constitutional right to police protection from violent protestors at the same UTR rally that is the basis for the instant case. *Turner v. Thomas,* 313 F. Supp. 3d 704, 710 (W.D. Va. May 29, 2018).

Turner alleged a due process right under the Fourteenth Amendment to be protected from harm by third parties that the police could have prevented. *Id.* In this case, Kessler and his co-plaintiff allege a right to be protected from harm to Plaintiffs' free speech rights by third parties that the police could have prevented. (Dkt. No. 1, ¶ 8.) This Court held that Turner had no clearly established right to police protection from violence at the UTR rally and therefore, the law enforcement defendants had qualified immunity from Turner's claims. *Turner*, 313 F. Supp. At 712.

In both this case and in *Turner* the same legal principle applies—a citizen does *not* have a constitutional right to police protection from unlawful acts by private citizens. *See DeShaney v. Winnebago Cty. Dept. of Soc. Serv.*, 489 U.S. 189, 195 (1989) (holding that the Due Process Clause of the Fourteenth Amendment does not require government actors to protect affirmatively life, liberty, or property against intrusion by private parties) (emphasis added). In *DeShaney*, a father of a minor child was suspected of abusing the child by the Department of Social Services (DSS). *Id.* at 192. Despite repeated investigations and noted suspicious injuries indicating likely abuse, the father retained custody of the child until one day he beat his son so severely as to cause the child to fall into "a life-threatening coma." *Id.* at 193. The child recovered consciousness, but suffered severe brain damage requiring institutional care for the rest of his life. *Id.*

The child and his mother brought suit against DSS, alleging that the Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life,

liberty, or property, without due process of law." *Id.* at 194 (alterations in the original). The plaintiffs in *DeShaney* alleged that the child had a liberty interest in "freedom from unjustified intrusions on personal security" and by "failing to provide him with adequate protection against his father's violence" the State failed to protect the child's liberty interest. *Id.* at 195 (internal quotations omitted). The Supreme Court of the United States held, however, that

> nothing in the language of the Due Process clause itself requires the State to protect the life, liberty, and property of its citizens against invasions by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot be fairly extended to impose an affirmative obligation on the State to ensure those interests do not come to harm through other means.

*Id.* The Court held that there simply is no right to government aid, not even when that aid is necessary to secure one's life, liberty interest, or property interest. *Id.* at 196. Finally, the Court held that because the Due Process Clause does not require States to aid their citizens in security their lives, liberty, or property, "it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them." *Id.* at 197.

In the instant case, Plaintiffs attempt to assert that the First Amendment guarantees them a right to government assistance in securing their right to free speech from intrusions by "hecklers." (Dkt. No. 1, ¶ 8.) The holdings of *DeShaney* and *Thomas*, however, run contrary to that claimed right. Because there is no right to police protection from private citizens even to protect a person's life, then there surely is no right to police protection to suppress "hecklers" that are preventing Plaintiffs from making speeches. Without a clearly established right to government aid, it follows that law enforcement officers, such as Lieutenant Crannis-Curl, cannot be held liable for failing to provide that aid.

## II.     THE PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST CRANNIS-CURL FOR SUPERVISORY LIABILITY

### A.  Crannis-Curl Has No Liability For The Actions Of Private Citizens

Count VI in the Amended Complaint alleges that Crannis-Curl is liable for Virginia State Troopers who failed to stop hecklers from interrupting Kessler's speech. (Dkt. No. 1 ¶¶ 113-119) The supervisory liability claim is based, however, on the allegation that Crannis-Curl "caused the Virginia State Troopers to fail in their duty not to participate in, cause, or acquiesce in Antifa's heckler's veto of the Plaintiff's event." (*Id.* at ¶ 115.)  Plaintiffs' claim of supervisory liability thus appears premised on an allegation that Crannis-Curl is liable in a supervisory capacity for the disruptive acts of private citizen "hecklers" who disrupted Kessler's rally and prevented him from speaking.

Yet, case law in the Supreme Court of the United States, the Fourth Circuit, and Western District of Virginia is clear: police have no liability for the actions of private people that infringe on another citizen's civil rights.  *DeShaney*, 489 U.S. at 203; *Pinder v. Johnson*, 54 F.3 1169, 1174 (4th Cir. 1995); *Turner*, 313 F. Supp. 3d at 714.

In *Pinder*, a plaintiff sought to hold a police officer liable for the murder of her three children after her ex-boyfriend murdered them.  *Pinder*, 54 F.3 at 1174.  The police officer had the ex-boyfriend in custody after he broke into her home and assaulted the plaintiff.  *Id.* at 1172. The ex-boyfriend threatened to murder the plaintiff and her children and "had just been released from prison after being convicted of attempted arson" of the plaintiff's home ten months earlier. *Id.*  The police officer assured the plaintiff that he would wait until the next day to swear out a warrant and therefore the ex-boyfriend would be detained overnight.  *Id.*  With this assurance, the plaintiff returned to work, leaving her children at home alone.  *Id.*  Breaking his express promise to the plaintiff, the police officer swore out a misdemeanor warrant that same evening,

which allowed the ex-boyfriend to be immediately released from jail. *Id.* Upon his release, the ex-boyfriend went directly to the plaintiff's home and set it on fire, killing the plaintiff's three children. *Id.*

The plaintiff brought suit against the police officer, alleging that he had a duty to prevent the harm that befell her and her children as a result of releasing her ex-boyfriend from jail. *Id.* The Fourth Circuit held that the police officer owed the plaintiff and her children no duty to protect them from the ex-boyfriend, despite the fact that the police officer made an express promise of protection upon which the plaintiff relied and despite the fact that the officer had the ex-boyfriend in his custody, which gave him an unusual amount of control over the ex-boyfriend's actions. *Id.* at 1175. Despite these circumstances, the Fourth Circuit held that the police owe citizens no duty of protection from the acts of other citizens, unless the State does something to increase the danger posed to potential victims. *Id.* The failed promise of police protection upon which a citizen relied is insufficient to meet the standard of increasing the danger, however. *Id.*

In this case, Plaintiffs allege that the police have a duty to protect them from disruption by other private citizens. Yet, they allege no basis for this duty. No special relationship existed between Plaintiffs and the police. On the contrary, Plaintiffs recite extensive allegations regarding Antifa's activities nationwide in disrupting many events, even when police were present and able to arrest the disruptive protestors. (Dkt. No. 1 ¶¶ 23-28). Plaintiffs also had the vivid demonstration of the KKK rally a month before the planned UTR rally that despite police efforts, counter-protestors were able to assault KKK members (and the police) and block the KKK from exiting the rally. (*Id.* at ¶¶ 27-28.) Plaintiffs clearly had no promise by the police

that police would successfully contain counter-protestors during the rally, unlike the plaintiff in *Pinder*, who had an express promise her ex-boyfriend would remain in jail overnight.

Nor did the police have any control over the counter-protestors, unlike the dangerous ex-boyfriend in *Pinder*. The basis for Plaintiffs' Amended Complaint is that they had a right to assemble and speak in a public space. (Dkt. No. 1, ¶¶ 78-79.) But because it was a public space, anyone could access it, even without a permit. With no control over Plaintiffs or the counter-protestors, there is no colorable claim that Crannis-Curl had "supervisory liability" for the acts of the private citizens at the rally.

### B. <u>The Officers Under Her Command Did Not Violate The Plaintiff's Civil Rights</u>

Plaintiffs also cannot state a claim for supervisory liability predicated on alleged constitutional violations by officers under Lieutenant Crannis-Curl's command. This Court already considered the question as to whether a commanding officer with the Virginia State Police had liability under 42 U.S.C. § 1983 for the inaction of VSP troopers at the UTR rally and held that there was none. *Thomas*, 313 F. Supp. 3d at 714-15. Citing *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994), this Court held that for there to be supervisory liability, a plaintiff must show both that "the supervisor liability under § 1983 was clearly established at the time of the incident" and that "the underlying constitutional violation was also clearly established." *Id.*

This Court held that "there is simply no constitutional right to state protection from 'criminals or madmen,' and a state official's failure to provide such protection 'is not actionable under § 1983.'" *Id.* (quoting *Doe v. Rosa*, 795 F.3d 429, 440 (4th Cir. 2015)). Therefore, this Court held that a count for supervisory liability premised on the alleged inaction of VSP troopers at the UTR rally for failing to protect citizens at the rally from each other was barred by qualified immunity.

This Court's holding in *Thomas* should apply with equal force to the instant case. Plaintiffs complain that Virginia State Police troopers should have protected them not from just physical assault, like Thomas alleged in his suit, but also from interruption at their public rally. The legal principles, however, are the same in both cases. Troopers have no duty to protect citizens from "criminals or madmen," whether that protection is from violence or disruptive heckling. Therefore, Lieutenant Crannis-Curl has no supervisory liability because there was no underlying constitutional violation and the sixth count should be struck with prejudice from Plaintiffs' Amended Complaint.

## C. **Crannis-Curl Has Qualified Immunity**

Crannis-Curl is sued in her individual capacity as a law enforcement officer who was in command of ground troops at the Unite The Right rally. (Dkt. No. 1, ¶ 6.) As a government official, she is entitled to qualified immunity unless her actions "violate clearly established law." *Turner*, 313 F. Supp. 3d at 711. For a right to be clearly established, existing precedent in the jurisdiction where the alleged action occurred must have placed the constitutional right at issue "beyond debate." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)); *Turner*, 313 F. Supp. 3d at 711. Defendants must have at least "fair warning" that their conduct violated the plaintiff's constitutional rights. *Turner*, 313 F. Supp. 3d at 711 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). "[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix*, 136 S. Ct. at 308 (internal quotations omitted).

As discussed above, not only are the rights Plaintiffs are asserting not clearly established, but they are directly contradicted by the established precedent. Both Supreme Court and Fourth Circuit case law establish that citizens have no right to police protection, even to protect their

lives and safety, and certainly not to safeguard their public speech from being heckled.

*DeShaney*, 489 U.S. at 203; *Turner*, 313 F. Supp. 3d at 711; *Pinder v. Johnson*, 54 F.3 1169,

1174 (4th Cir. 1995). Plaintiffs cannot argue for liability under a new extension of First

Amendment free speech and freedom of assembly principles without violating Lieutenant

Crannis-Curl's qualified immunity.

## **CONCLUSION**

Defendant Crannis-Curl respectfully requests that this Court follow the precedent set by

*Thomas* and dismiss the case against her with prejudice. The First Amendment right to free

speech prevents the government from infringing on Plaintiffs' freedom to speak, but it does not

guarantee them police protection from interruption by private parties. There is no supervisory

liability for police commanders for unlawful conduct by private citizens, nor is there liability for

police commanders when the troopers under their command have not violated any constitutional

right. To the degree Plaintiffs advocate for an extension of constitutional rights contrary to the

clear legal precedent applicable in this jurisdiction, qualified immunity bars Lieutenant Crannis-

Curl from being held liable for violating rights that were not clearly established at the time of the

Unite The Right rally.


Respectfully Submitted,

*/s/ Erin R. McNeill*
Erin R. McNeill (VA Bar No. 78816)
Assistant Attorney General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone (McNeill): (804) 692-0598
Fax: (804) 371-2087
E-mail: emcneill@oag.state.va.us
*Counsel for Defendant Becky Crannis-Curl*

11

Mark R. Herring
Attorney General of Virginia

Samuel T. Towell
Deputy Attorney General

Marshall Ross
Senior Assistant Attorney General/Acting Trial Section Chief

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2019 I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF)

to all counsel of record.

/s/ Erin R. McNeill
Erin R. McNeill (VA Bar No. 78816)
Assistant Attorney General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 692-0598
Fax: (804) 371-2087
E-mail: emcneill@oag.state.va.us
*Counsel for Defendant Becky Crannis-Curl*