UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

JASON KESSLER )
and )
DAVID MATTHEW PARROT, )
  )
   *Plaintiffs* )
  )
v. ) Civil Action No.: 3:19-cv-00044
  )
CITY OF CHARLOTTESVILLE, et als, )
  )
   *Defendants* )

**DEFENDANT JONES' MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS**

Defendant Maurice Jones, by counsel, files this memorandum in support of his motion to dismiss filed pursuant to Rule 12(b)(6) and states as follows:

The First Amendment does not protect violence, nor does it forbid a state from preventing imminent lawless action. *Christian Knights of Ku Klux Klan Invisible Empire, Inc. v. Stuart*, No. 89-1585, 1991 U.S. App. LEXIS 11312, at *5 (4th Cir. June 5, 1991) *reported as Table Case at* 934 F.2d 318. Nevertheless, Plaintiffs, who are members of the Alt-Right movement known for their "liberal use of racially and religiously offensive language,"(Complaint 12) brought this case against the City of Charlottesville, former chief of police, Al Thomas, and this Defendant, Maurice Jones, the former city manager, for alleged violations of their First Amendment rights when Chief Thomas allegedly issued an equally-applied nonintervention order to police during the "Unite the Right" (UTR) rally in Charlottesville VA on August 12, 2017, and then in response to the mutual combat and fights occurring between the Alt-Right protestors and the Antifa counter protesters declared an unlawful assembly applicable to *all* involved and ordered *everyone* to disperse the area.

TimberlakeSmith
Staunton, VA
540.885.1517

Defendant Maurice Jones is not alleged to have taken affirmative action against Plaintiffs, but rather he is alleged to have failed to countermand or fire Chief Thomas when Chief Thomas issued the nonintervention order and the equally-applied unlawful assembly declaration. (Complaint 63).

Defendant moves to the dismiss the case against him for failure to state a First Amendment claim and because he is entitled to qualified immunity.

## ALLEGATIONS

Defendant Jones adopts and incorporates herein the recitation of the allegations and facts set forth in Defendant Thomas's memorandum in support of his motion to dismiss (Doc.43). Defendant Jones adds the following for consideration in support of his motion to dismiss.

The Complaint concedes that Chief Thomas's alleged non-intervention order applied equally to both protestors and counter protestors as Plaintiffs acknowledge that Chief Thomas ordered non-intervention in cases of "*mutual* combat" so as to "let *them* fight" (Complaint 50, 51) *emphasis added*. Likewise, the declaration of unlawful assembly and disbursement order applied to *all* persons, not just to Plaintiffs and the Alt-Right. (Complaint 76).

Notably absent from the Complaint is any affirmative act by Defendant Jones. Rather the factual allegations against him are that he did not countermand Chief Thomas's non-intervention order or fire Chief Thomas when Defendant Jones heard him say "let them fight" to make it easier to declare an unlawful assembly. (Complaint 62).

Plaintiffs' repeated characterization of the nonintervention order and unlawful assembly declaration as a heckler's veto" are conclusory allegations not supported by the actual facts alleged. Likewise, Plaintiffs' allegation that "Defendants" used the confrontations between Antifa and Alt-Right to declare an unlawful assembly based on "their objection to the content of Plaintiffs' speech" (Complaint ¶17, 78, 79) are legal conclusions (as well as pure unsupported speculation). Such

TimberlakeSmith
Staunton, VA
540.885.1517

2

conclusory allegations are not accepted as true for the purposes of this motion. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

## ARGUMENT

### I. Standard of Review

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is "to test the legal sufficiency of the complaint." *Randall v. U.S.*, 30 F.3d 518, 523 (4th Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible" when the plaintiff pleads facts sufficient to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Twombly*, 550 U.S. at 556. A court should grant a motion to dismiss, however, where the allegations are nothing more than legal conclusions, or where the allegations permit a court to infer no more than a possibility of misconduct. *See Iqbal,* 556 U.S. at 678–79. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *See id*. at 678.

The Court need not accept legal conclusions that are presented as factual allegations, *Twombly*, 550 U.S. at 555, or "unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556

TimberlakeSmith
Staunton, VA
540.885.1517

3

U.S. at 678 (*quoting Twombly*, 550 U.S. at 557); *see also, Tobey v. Jones*, 706 F.3d 379 at 387–88 (4th Cir. 2013).

> **II. Plaintiffs' failed to state a claim of a violation of the First Amendment through a heckler's veto.**

Plaintiffs' entire case rests on the repeated conclusory characterization of the alleged nonintervention order to break up "mutual combat" and the subsequent declaration of an equally-applied unlawful assembly as a "heckler's veto." A heckler's veto occurs when police take affirmative action against a peaceful speaker based solely on a listener's reaction to the speech. This is because a person's reaction to speech is not a content-neutral basis for regulation, or for taking an enforcement action against a peaceful speaker. *Bible Believers v. Wayne County, Mich.*, 805 F.3d 228, 247 (6th Cir. 2015). Thus, when police seek to enforce law and order, they must do so in a way that does not unnecessarily infringe upon the constitutional rights of law-abiding citizens. *Id.* at 248. This does not, however, impose a special duty on police to protect the speaker from the criminal acts of a third party, nor does it mean that police are prohibited from taking content and viewpoint neutral action to enforce law and order.

> A. **The First Amendment does not require police to protect Plaintiffs**

The Complaint alleges that Defendant Jones did not countermand or fire Chief Thomas when he issued the alleged nonintervention order. (Complaint 62). The Complaint presumes that Defendants should have intervened earlier to protect the Alt-Right protestors either from the interruption from Antifa counter protestors or from the criminal and violent acts of Antifa counter protestors and otherwise had a duty to protect Plaintiffs. However, there is no constitutional right to police protection from "criminals and madmen" *Doe v. Rosa*, 795 F.3d 429, 440(4th Cir. 1983). State actors may not be held liable under the Fourteenth Amendment for "st[anding] by and d[oing] nothing when suspicious circumstances dictated a more active role for them," *Turner v. Thomas*,

TimberlakeSmith
Staunton, VA
540.885.1517

4

930 F.3d 640, 646 (4th Cir. 2019) *quoting Pinder v.Johnson*, 54 F.3d 1169, 1175 (4th Cir. 1995). This is because the constitution does not guarantee certain minimal levels of safety and security nor does the state have an affirmative obligation to ensure the interests of a person do not come to harm through other means. *DeShaney v. Winnebago Cty. Dept. of Soc. Serv.*, 489 U.S. 189, 195 (1989).

The Complaint improperly presupposes the existence of an affirmative constitutional duty on police to protect Plaintiffs' protest from interruption by private citizens or to protect Plaintiffs' from criminal or violent acts of those private citizens. The First Amendment does not create such an affirmative duty to protect where no such duty previously existed. In the event police need to enforce law and order during a protest, the First Amendment *permits,* but does not require, police to take action "against the hecklers, cordon off the speakers, or attempt to disperse the entire crowd if that becomes necessary." *Bible Believers v. Wayne County, Mich.*, 805 F.3d 228, 247 (6th Cir. 2015). This permission to enforce law and order, however, does not amount to an affirmative duty to protect. As the Fourth Circuit determined when it affirmed this Court's decision, there is no clearly established right to police protection at the UTR rally. *Turner,* 930 F.3d at 646.

B. **The nonintervention order and subsequent equally-applied declaration of unlawful assembly was content and viewpoint neutral.**

A governmental entity may not permanently enjoin otherwise legal expression because of the threat of a hostile reaction from the public. *Christian Knights of Ku Klux Klan Invisible Empire, Inc.*, 1991 U.S. App. LEXIS 11312, at *5. Nevertheless, governmental entities retain the right to regulate the use of public streets to protect legitimate government interests in maintaining public order and avoiding violence. *Id*. The First Amendment does NOT forbid police from preventing imminent lawless action. *Id*.

In this case, Chief Thomas declared an unlawful assembly which occurs:

TimberlakeSmith
Staunton, VA
540.885.1517

5

> Whenever three or more persons assembled share the common intent to advance some lawful or unlawful purpose by the commission of an act or acts of unlawful force or violence likely to jeopardize seriously public safety, peace or order, and the assembly actually tends to inspire persons of ordinary courage with well-grounded fear of serious and immediate breaches of public safety, peace or order, then such an assembly is an unlawful assembly.

Va. Code § 18.2-406. This statute has been determined not to violate the First Amendment's guarantees of free speech. *See United Steelworkers of Am., AFL-CIO-CLC v. Dalton,* 544 F. Supp. 282, 289 (1982) (there is no doubt that the states retain the right to maintain public order and this statute does not violate the First Amendment on its face). This is because the First Amendment does not protect violence. *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 916 (1982); *Am. Life League v. Reno*, 47 F.3d 642, 648 (4th Cir. 1995). The First Amendment does not immunize violence simply because such conduct occurs within the broader context of a political demonstration. *United States v. Daley*, 378 F. Supp. 3d 539, 559 (W.D. Va. 2019).

This is not a case where the affirmative action by the police was in the form of arrest or removal or arrest of only the unpopular speaker as was the in case in *Bible Believers v. Wayne Cnty.*, *supra*. In *Bible Believers*, only the peaceful protestors were the subject of an affirmative act such as arrest, which the Court found to be a violation of the First Amendment through a heckler's veto as there were other less restrictive means to restore order. Here, there was no disparate treatment. The Complaint acknowledges that the unlawful assembly was as result of the *mutual* combat of both the protestors and the counter protestors. The declaration of an unlawful assembly applied *equally* to all involved and not just to Plaintiffs, and the order to disperse applied to the entire crowd. Neither the declaration of unlawful assembly nor the dispersing of both the protestors and the counter-protestors, violated Plaintiffs' First Amendment rights. The dispersing of both the protestors and counter-protestors was a content- and viewpoint-neutral restriction on speech. The facts alleged in the complaint and as outlined in the Heaphy Report upon which Plaintiffs rely

6

TimberlakeSmith
Staunton, VA
540.885.1517

Case 3:19-cv-00044-NKM-JCH   Document 45   Filed 10/25/19   Page 6 of 10   Pageid#: 477

reveals that the Alt-Right attendees were likewise engaged in violent, mutual combat with counter-protestors warranting the unlawful assembly declaration. *See* Heaphy Report, at 127, 130-38 attached to Defendant Thomas's memorandum in support.

For these reasons, Plaintiffs have failed to state a claim that Defendant Jones violated Plaintiffs First Amendment rights and the Complaint should be dismissed with prejudice.

## III. Qualified Immunity

Defendant Jones is entitled to qualified immunity for the claim asserted against him because he did not violate a clearly established right. The United States Supreme Court established a two-step process for examining the issue of qualified immunity. The first question is, " taken in the light most favorable to the party asserting the injury, do the facts alleged show that the [official' s] conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2155 (2001). If the court finds no constitutional violation, the analysis ends. *Id*. If the court determines that a constitutional violation took place, the next step " is to ask whether the right was clearly established," that is, " whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 201-02. Put another way, an officer "should prevail on an assertion of qualified immunity if a reasonable officer possessing the same information could have believed that his conduct was lawful." *Slattery v. Rizzo*, 939 F.2d 213, 216 (4th Cir. 1991) (*quoting Tennessee v. Garner*, 471 U.S. 1, 11 (1985)). Application of the analysis in this order of sequence is not mandatory but is often beneficial. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 818 (2009).

Qualified immunity protects " all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096 (1986). Qualified Immunity therefore gives officers ample room for mistaken judgments and protects law

TimberlakeSmith
Staunton, VA
540.885.1517

7

enforcement officers from civil liability to the extent that " their conduct does not violate clearly established statutory or constitutional rights of which a reasonable [officer] would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982).

Whether an official protected by qualified immunity may be held personally liable for allegedly unlawful official action generally turns on the " objective legal reasonableness" of the action assessed in light of the legal rules that were clearly established at the time it was taken. *S.P. v. City of Takoma Park*, 134 F.3d 260, 266 (4th Cir. 1998) *citing Anderson v. Creighton*, 483 U.S. 635, 639 (1987). Plaintiff must show that the right allegedly violated was " clearly established" in more than just a general sense. The plaintiff must demonstrate that the particular actions of the defendant were unlawful under the law established at the time of the incident. *Id*. " Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Marciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir. 1992). Clearly established law must be 'particularized' to the facts of the case. Otherwise, plaintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." White v. Pauly, 137 S. Ct. 548, 551–52 (2017). Only the decisions of the Supreme Court, the Fourth Circuit, and the highest court of the state in which the conduct occurred are relevant. *Doe ex rel. Johnson v. S.C. Dept. of Soc. Servs*., 597 F.3d 163, 176 (4th Cir. 2010).

Here, even if this Court were to determine that a constitutional violation occurred, such a right was not clearly established at the time in question. For the reasons discussed *supra*, a reasonable officer in Defendant Jones' position would not know that he violated Plaintiffs' constitutional rights by not countermanding or firing Chief Thomas when he issued the alleged noninterference order or when he declared an equally-applied unlawful assembly as a result of the *mutual* combat and fighting amongst protestors and counter-protestors, and dispersed the *entire*

TimberlakeSmith
Staunton, VA
540.885.1517

8

crowd. The Fourth Circuit has already concluded that Chief Thomas was entitled to qualified immunity because it "was not clearly established at the time of the rally that ordering officers not to intervene in private violence between protestors was an affirmative act within the state-created danger doctrine." *Turner*, 930 F.3d at 646. If Chief Thomas is entitled to qualified immunity for his actions, then so to is Defendant Jones who is only alleged to have not intervened or countermanded those immune actions or order.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice and Defendant Jones award such other and further relief as this Court deems appropriate.

MAURICE JONES,

By Counsel

By: /s/*Rosalie P. Fessier*
_____
Rosalie Pemberton Fessier
VSB # 39030
Brittany E. Shipley
VSB # 93767
Attorneys for Defendant Jones
Timberlake**Smith**
25 North Central Avenue
P. O. Box 108
Staunton, VA 24402-0108
phone: 540/885-1517
fax: 540/885-4537
email: rfessier@timberlakesmith.com

CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2019 , I have electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

>Elmer Woodard, Esquire
>5661 US Hwy 29
>Blairs, VA  24527
>
>James E. Kolenich, Esquire
>Kolenich Law Office
>9435 Waterstone Blvd, Suite 140
>Cincinnati, OH  45249
>*Counsel for Plaintiffs*
>
>Richard H. Milnor, Esquire
>Taylor Zunka Milnor & Carter LTD
>414 Park Street
>Chartlottesville, VA 22902
>*Counsel for City of Charlottesville and Rchardson*
>
>Erin Rose McNeill, Esquire
>Office of the Attorney General of Virginia
>202 North Ninth Street
>Richmond, VA 23219
>*Counsel for Defendant Crannis-Curl*
>
>/s/ *Rosalie P. Fessier*
>_____
>Rosalie Pemberton Fessier
>VSB # 39030
>Brittany E. Shipley
>VSB # 93767
>Attorneys for Defendant Jones
>Timberlake**Smith**
>25 North Central Avenue
>P. O. Box 108
>Staunton, VA 24402-0108
>phone:  540/885-1517
>fax:       540/885-4537
>email:   rfessier@timberlakesmith.com