CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
06/18/2020
JULIA C. DUDLEY, CLERK
BY: /s/ J. JONES
       DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| JASON KESSLER, *et al.*, | |
| *Plaintiffs*, | CASE NO. 3:19-cv-00044 |
| v. | ORDER |
| CITY OF CHARLOTTESVILLE, *et al.*, | |
| *Defendants*. | JUDGE NORMAN K. MOON |

    This matter is before me on an uncommon motion, Plaintiffs' motion for recusal of my two term law clerks "from further involvement in any 'Unite the Right' related litigation," on account of their personal relationships—not with a party in this case, but rather, the named plaintiff in another case, *Sines v. Kessler*, No. 3:17-cv-72. *See* Dkt. 55.

    For those unfamiliar with the role of a judicial law clerk, a federal district judge like myself may have one or more law clerks. A law clerk's role varies by judge and clerk, but often it includes conducting legal research, reviewing pleadings and legal memoranda, and assisting the judge in resolving motions and docket management. *See* Federal Judicial Center, Law Clerk Handbook 1 (2d ed. 2007) ("Law clerks have no statutorily defined duties; they carry out their judges' instructions."). I have three law clerks: two term (one-year) law clerks; and one career law clerk.

    When my two current term law clerks started their one-year term in August 2019, they promptly informed me that they personally knew a party in *Sines v. Kessler*—a case before me that had been filed in 2017, which arises out of the Unite the Right rally. Namely, they knew and were friends with the lead plaintiff Ms. Sines from law school. *See* Federal Judicial Center, Maintaining the Public Trust: Ethics for Federal Judicial Law Clerks 11 (3d ed. 2012) ("Remember to inform your judge as soon as you become aware of a conflict or a potential conflict. Your judge

1

will then determine how to proceed. Most judges have more than one law clerk and can assign another clerk to a case if necessary."). I thought it advisable, out of an abundance of caution, that they not work on *Sines v. Kessler*. As a result, I screened my two term law clerks from that case, and they have not worked on and will not work on that case for the remainder of their term, which I expect will end in August 2020. Whenever I have found the assistance of a law clerk helpful on *Sines v. Kessler*, my career law clerk has worked on the matter since he started work in my Chambers in September 2019. My career clerk does not know Ms. Sines or any other party to that action.

When this case was filed in August 2019, on account of my standard practice to assign clerks to assist me with each of my cases by case number, one of my term law clerks, whom I will refer to as JL, was by default assigned to assist me on it. After this case was filed, JL again raised the fact that he had been screened from *Sines v. Kessler* because he personally knew Ms. Sines, and noted that he offered her shelter during the Unite the Right rally. But this case is not *Sines v. Kessler*, Ms. Sines is not a party, and she is not mentioned in the complaint. The claims and subject matter of the suit were different as well—here, Mr. Kessler and Mr. Parrott have sued the City of Charlottesville and city and police officials, alleging that defendants had violated their First Amendment rights by allowing Antifa members to effectuate a "Heckler's veto" making them unable to speak and demonstrate at the Unite the Right rally in the manner they planned to. *See, e.g.*, Dkt. 1 ¶¶ 8, 17. I did not see any reason why my term law clerk should not work on this matter as assigned by default and so he continued to do so—indeed, all my clerks worked on this case, including on my opinion granting Defendants' motion to dismiss. *See* Dkt. 52.

Plaintiffs ask me to "disqualify [my two term clerks] from further involvement in any 'United the Right' related litigation," under 28 U.S.C. §§ 455(a) and (b)(1). Dkt. 55 at 1.

28 U.S.C. § 455(a) states that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(b)(1) states that any judge shall recuse "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." While these statutes describe instances in which a judge should recuse, a law clerk would have to recuse under comparable circumstances. Canon 3(F)(1) of the Code of Conduct for Judicial Employees prohibits a law clerk from performing official duties in a matter in which the employee "might be so personally or financially affected by a matter that a reasonable person with knowledge of the relevant facts would question the judicial employee's ability properly to perform official duties in an impartial manner." Canon 3(F)(2)(a)(i) also prohibits a law clerk from performing any official duties "in any matter with respect to which such … law clerk knows that he or she has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."

As Plaintiffs acknowledge, if a clerk has a possible conflict of interest, it is the clerk, not the judge, who must be disqualified. Dkt. 55 at 2; *see United States v. DeTemple*, 162 F.3d 279, 287 n.2 (4th Cir. 1998); *Hunt v. Am. Bank & Tr. Co. of Baton Rouge*, 783 F.2d 1011, 1016 (11th Cir. 1986). As movants, Plaintiffs bear the burden to show that relief is warranted under § 455. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 847 F. Supp. 2d 843, 857 (E.D. Va. 2012).

Plaintiffs' whole argument why my term law clerks should be disqualified from any further work on this case rests not on their relationship with any party in this case, or prior knowledge of any disputed facts in this case. Rather, it rests on assertions that my term law clerks had a personal relationship with a party in another case, namely Ms. Sines, in *Sines v. Kessler*, and that one of my

3

law clerks (JL) provided Ms. Sines shelter during the Unite the Right rally. *See* Dkt. 55. Again, to state the obvious, this case is not *Sines v. Kessler*. It is a different case, filed years later. Ms. Sines is not a party. She is not mentioned in the complaint. Her injuries are not at issue in this case. I can see no plausible way JL would have any personal knowledge of any disputed evidentiary facts in this case. *See* Dkt. 55 at 3. Nor do Plaintiffs attempt to articulate any facts in *this case* about which they contend JL would have personal knowledge. Disqualification under 28 U.S.C. § 455(b)(1) on account of personal knowledge of any disputed fact is clearly not warranted. Nor do Plaintiffs cite cases that address a remotely analogous situation, where a court employee's relationship with a party in one case warrants recusal in another that does not have the same party, and that raises different claims.

For these reasons, I also do not believe that the circumstances described establish that my term law clerks would be "personally or financially affected by a matter that a reasonable person with knowledge of the relevant facts would question the judicial employee's ability properly to perform official duties in an impartial manner." Canon 3(F)(1), Code of Conduct for Judicial Employees; *see also* 28 U.S.C. § 455(a). They promptly informed me and my staff of any potential conflicts, followed my subsequent instructions, and did exactly what the rules require. Nor do I see any prejudice stemming from their involvement, considering that I had previously issued an opinion dismissing an analogous lawsuit brought by *anti*-Unite the Right protesters against the City of Charlottesville and police officials, in which I rejected similar claims to liability as *pro*-Unite the Right Plaintiffs raised here. *See Turner v. Thomas*, 313 F. Supp. 3d 703 (W.D. Va. 2018), *aff'd* 930 F.3d 640 (4th Cir. 2019). In that case, I concluded that under *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), the police did not have a clearly established constitutional duty to protect a citizen from criminal conduct by third parties. My

4

opinion in *Turner* all but resolved the analysis in this case as well, and I issued that opinion before any of my current law clerks began their positions in my chambers.

Nonetheless, I have no desire to further delay resolution of this case or to perpetuate any ancillary matters to the merits of Plaintiffs' lawsuit. Plaintiffs requested that my term law clerks have no further involvement in this case. Dkt. 55. My term clerks will have no further involvement in this case. Indeed, since these motions were filed, I already concluded out of an abundance of caution that only my career law clerk would assist me on this case to the extent I find assistance of a law clerk useful, including my resolution of Plaintiffs' pending Motion to Alter or Amend the Judgment. *See* Dkt. 54. The Court will therefore **GRANT** the motion for recusal of my term law clerks from this case, who will have no further involvement in this action.[1]

It is so **ORDERED**.

The Clerk of the Court is directed to send a certified copy of this Order to the parties.

Entered this   18th   day of June, 2020.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

---

[1] Plaintiffs move for recusal of my term law clerks from "further involvement in any 'Unite the Right' related litigation," by which the Court believes they mean the two separate lawsuits in which near-identical motions were filed by one or more of moving defendants here. The Court has addressed those motions in those actions.